Carterville Coal Co. v. Covey-Durham Coal Co., 186 Ill. App. 163.

## Carterville Coal Company, Appellee, v. Covey-Durham Coal Company, Appellant.

### Gen. No. 18,843.

1.  MUNICIPAL COURT OF CHICAGO, § 13*—*when form of statement of claim not irremediable.*  In an action brought in the Municipal Court on a statement of claim for goods "sold and delivered," where it appeared before the actual trial that the suit was based on a *del credere* agency contract, *held* that the difference between a liability on *del credere* agency and on a direct purchase was not so great that under the reformed and summary practice in the Municipal Court a mistake in the form of the "statement" was irremediable.

2.  CONTRACTS, § 377*—*when testimony as to admissions of deponent in unfiled deposition admissible to construe contract.*  In an action by a coal company for coal sold and delivered to another coal company, where a contract between the parties was ambiguous as to whether it was a contract for the purchase and sale of coal or a *del credere* agency contract, and the court refused to require the plaintiff to file a deposition of the president of the plaintiff Company, *held* that the court erred in ruling that the defendant could not prove anything in the nature of an admission made by such officer of the plaintiff Company concerning the intention and meaning of the contract which could be proved by a witness who heard them made.

3.  CONTRACTS, § 12*—*when not wanting in mutuality.*  A contract between a coal company and another coal company in which the former agreed to furnish the latter with coal, *held* not wanting in mutuality.

---

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Carterville Coal Co. v. Covey-Durham Coal Co., 186 Ill. App. 163.

4. DEPOSITIONS, § 28*—*when party denied right to have deposition filed may introduce evidence of deponent's admissions.* Where the court refuses to require a deposition of a person to be filed or to allow a carbon copy thereof to be read, a ruling that in consequence thereof no oral testimony could be heard of anything which such person said while giving such deposition and which was made a part of the deposition, *held* erroneous.

5. FACTORS, § 26*—*when exclusion of evidence of damages to factor's business is error.* In an action by a coal company against another coal company where the contract between the parties was held to constitute a *del credere* agency, action of the trial court in striking out and refusing all evidence to support a counterclaim alleging damages to defendant's business by reason of the defaults of plaintiff in furnishing coal, *held* reversible error.

6. FACTORS, § 26*—*elements of damages provable on counterclaim for breach of contract by principal to furnish coal.* In an action to recover for coal sold and delivered where the agreement constitutes a *del credere* agency, certain elements of damages *held* proper to prove on a claim of set-off.

7. CUSTOMS AND USAGES, § 17*—*when evidence of custom competent in construing contract.* Where a contract for the sale and delivery of coal exempts the seller from liability to furnish coal from lack of "car supply," evidence of a custom of the coal district involved in the transactions concerning the furnishing of cars, *held* competent to aid in construing the contract.

8. TRIAL, § 53*—*right to open and close.* Refusal of court to allow the defendant to open and close the case, *held* too technical and immaterial to warrant a reversal, even if it was error.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed May 4, 1914.

**Statement by the Court.** This is an appeal from a judgment rendered in a first-class case by the Municipal Court of Chicago. The judgment was in favor of the appellee, the Carterville Coal Company, plaintiff below, against the Covey-Durham Coal Company, defendant below and appellant in this court. The amount of it was $3,919.54. The judgment was rendered on the verdict of a jury, but the jury were instructed by the court at the conclusion of all the evidence to find the issues for the plaintiff and assess the damages at the sum for which the judgment was rendered.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

The pleadings and proceedings in the cause took the following course:

April 5, 1911, the plaintiff filed in the Municipal Court of Chicago a *praecipe* to the summons in a suit in *assumpsit*, setting the damages at $5,000, and with it filed a statement and affidavit of claim. The statement of claim was that the claim was "for a balance due plaintiff from defendant in the sum of $3,897.40 for coal *sold defendant* on the dates and in the amounts" set forth in the statement, which contained between one and two hundred items of varying amounts, the dates running from August 3, 1909, to March 31, 1910. The total amount of the items was $11,765.41, but various credits of cash, with two small allowances also shown in the account, reduce the balance asserted to be due to $3,897.40. The affidavit is by one of the attorneys for the plaintiff and declares the nature of plaintiff's demand to be "for coal sold defendant by plaintiff." May 22, 1911, after the appearance of defendant, the plaintiff filed an amended statement and affidavit of claim, again stating that the claim was for "a balance due plaintiff from defendant for coal sold defendant by plaintiff," but giving in the account appended descriptions of cars, grade of coal, net weight and rate per ton, not given in the first statement, and making the sum of the items of charges slightly less and that of the credits slightly more, so that the balance was computed at $3,787.70. This amount another of the attorneys for the plaintiff swore in the accompanying affidavit was due to the plaintiff from defendant "for coal *sold defendant by the plaintiff.*"

The defendant thereupon, June 7, 1911, by its secretary, filed an affidavit of defense, in which the affiant first asserts that "he verily believes that the defendant has a good defense to this suit upon the merits to the whole of the plaintiff's demand," and then describes the nature of the defense by averring that the plaintiff cannot prosecute a suit for coal sold the de-

fendant by the plaintiff because, before the date that the payment for coal delivered would have been due, the plaintiff was in default on the same contracts in the delivery of the coal, which default still continues. The nature and amount of the default the affiant says is set out in the defendant's statement of set-off filed with the affidavit. He further sets out alleged mistakes, clerical and otherwise, in the plaintiff's statement of claim amounting to $237.20, and concludes:

"Affiant further avers that on April 5, 1910, and subsequent dates, defendant offered to allow the amount of plaintiff's claim as herein corrected against defendant's claim of damages as is set out in defendant's statement of counterclaim and set-off filed herewith, and defendant now sets up as a further defense against plaintiff's claim its counterclaim and set-off filed herewith and (should the Court hold that plaintiff's claim is a valid claim) defendant prays judgment for the balance due in its favor."

The "statement of set-off and counterclaim" filed with said affidavit sets up "damages for failure by plaintiff to deliver coal according to its contracts with defendant," and proceeds with five specified items of failure to deliver coal amounting in the aggregate to about 9,000 tons and damages aggregating $11,530.80. The statement says that because of the failure of plaintiff to deliver the coal it became necessary for the defendant to purchase coal at prices more than the contract price, and that the defendant claims as damages the difference between the contract price and the market price at the time the coal should have been delivered. The statement concludes with an offer to give the plaintiff credit for its claim of $3,603.16 on the claim of defendant.

Attached to this statement were another affidavit of the secretary of the defendant, describing the defendant's demand to be "for failure to furnish coal as above set out according to contracts," and fortynine pairs of documents which in form and in general purport are alike, except that they all differ in the

Carterville Coal Co. v. Covey-Durham Coal Co., 186 Ill. App. 163.

dates, numbers, names of consignee or consignees, destination, amount of coal to be shipped, etc. One of these pairs as illustrating them all is given here to make clear their nature and the controversy concerning their construction in this case:

"J. F. Covey, Pres.                    R. W. Durham, Secy.
        COVEY-DURHAM COAL CO.
              215 Dearborn Street.
Telephone
Harrison 3047.                  Chicago, May 24, 1909.
                                    Order No. 5566.
Carterville Coal Co.,
    St. Louis, Mo.
Gentlemen:
    Please enter the following order and acknowledge receipt of same on attached slip:

| Consign to Z. K. Hoag | Town Iowa Falls, Ia. | Cars 10 cars | Kind 6" Lp. or 3x6 egg | Price 1.27½ | F.O.B. Mine | Ship as below | Via I. C. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Cars to be 40 tons or less.  Ship in equal monthly quantities Sept. 1st, 09 to March 1st, 1910.
                            Yours truly,
                                COVEY-DURHAM COAL CO.,
                                    By R. W. Durham."
The "attached slip" was:
                                "St. Louis, May 26, 1909.
Covey-Durham Coal Co.,
    Chicago, Ill.
Gentlemen:
    We are in receipt of your order No. 5566 of 5-24-09, and have entered same on our books for shipment as directed.
10 cars 6" Lump or 3x6 egg      Yours truly,
for Z. K. Hoag, Iowa Falls, Ia.    CARTERVILLE COAL CO."

The slip was printed except in the portions above underlined.

July 10, 1911, the defendant, by leave of court, amended this "Statement of Set-off and Counterclaim" by inserting a detailed statement of the failures to ship in relation to each of the forty-nine orders. Thus, for example, as to the order above specified, the statement as amended set forth:

Carterville Coal Co. v. Covey-Durham Coal Co., 186 Ill. App. 163.

| Contract No. | To be Shipped to | Contract Price | | Contract Price | | Contract Price | | Contract Price | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | 1.05 | | 1.10 | | 1.15 | | 1.27½ | |
| | | Cars | Tons | Cars | Tons | Cars | Tons | Cars | Tons |
| 5566 | Z. K. Hoag | | | | | | | 7 | |

thus alleging a default in the shipment of seven of the ten cars ordered for Z. K. Hoag.

The statement as amended stated that the tonnage was estimated at forty tons per car.

The following paragraph was also added to the statement by the amendment:

"As a further item of damage defendant claims damage for loss of business and custom. For many years defendant had been engaged in buying and selling coal; defendant had always promptly filled its contracts with its customers, all of which plaintiff well knew. The defendant, relying upon its contracts with the plaintiff, made contracts for the sale of coal so purchased from plaintiff. Defendant depended upon the plaintiff's fulfilment of its contracts for its supply of coal with which to carry out its contracts with its customers, and because of plaintiff's breach of its contracts as hereinbefore set out, defendant was unable to fill its contracts with its purchasers and thereby lost several of its customers and thereby has been greatly damaged in its business. Because of plaintiff's repeated promises to furnish the coal contracted for, defendant did not buy other coal in the market, and as a result of plaintiff's breach of contract defendant lost its reputation for prompt performance of its contracts. Defendant notified plaintiff that unless the plaintiff performed its contracts with defendant, defendant's business would be greatly damaged, and plaintiff well knew that defendant's business would be so damaged. Defendant claims therefore an additional counterclaim of ten thousand ($10,000) dollars for damage to its business by reason of plaintiff's failure to perform its contracts as is herein alleged."

Another amendment by defendant of the set-off claim made the statement a little more detailed, but without changing its essential character. To the statement as finally amended and filed on September 22, 1911, the secretary of the defendant appended his affidavit that there was due to the defendant from the plaintiff for failure to furnish coal according to the contracts, $7,966.31, after allowing all credits and also additional unliquidated damages for losses to business for such failure.

On the same day, September 22, 1911, the court on motion of the plaintiff ordered the "additional counterclaim" of $10,000, or of unliquidated damages, for "damage to business" disallowed and stricken out. December 1, 1911, the court denied a motion of the plaintiff to strike the whole of defendant's claim of set-off from the files and granted leave to the plaintiff to file an affidavit of merits of defense to said claim.

December 15, 1911, the president of the plaintiff, the Carterville Coal Company, filed an affidavit in behalf of the Company, in which he asserted that the defense of the plaintiff to the amended set-off and counterclaim filed by the defendant was that on March 10, 1909, the plaintiff entered into a contract with the defendant, the Covey-Durham Coal Company, to sell coal for the plaintiff in certain described territory solely on a commission basis. The affidavit sets out the contract, and as the present controversy and the rulings of the court below turn on that contract, we give it in full:

"St. Louis, Mo., March 10, 1909.
Covey-Durham Coal Co.,
    Chicago, Ill.
    Gentlemen: We hereby propose to give you the exclusive sale of our coal in the following territory and under the following conditions from March 31, 1909, until March 31, 1910.

Carterville Coal Co. v. Covey-Durham Coal Co., 186 Ill. App. 163.

Territory.

On all lines of railroad in Illinois north of Centralia except in the City of Chicago and within a radius of fifty miles.

Illinois Central R. R. in Wisconsin.

Illinois Central R. R. in Iowa as far west as Fort Dodge, Ia.

Conditions.

Prices to be agreed on from time to time and commissions to be allowed on the following basis:

Lump, Egg, Mine Run and No. 1 Nut.

Sold at $1.25 per ton or less, com. to be 10c   per ton.

"    "    1.30 to $1.40 per ton, com. to be 12½   "   "

"    "    1.45 to   1.70 "   "    "    "   " 15     "   "

"    "    1.75 to   2.00 "   "    "    "   " 20     "   "

"    "    2.10 to   2.50 "   "    "    "   " 25     "   "

Screenings No. 2 Nut and Pea.

Sold at $1.00 per ton or less, com. to be 10c   per ton.

Sold at   1.05 per ton or over, com. to be 10% of selling price.

Slack sold at .50 per ton or less, com. to be 10c per ton.

Slack sold at .65 to .75 per ton, com. to be 12½ per ton

Slack sold at .80 to 1.00 per ton, com to be 15   per ton.

and all sizes not mentioned above and for coal sold at higher prices than named herein commissions allowed shall be at least 10% of prices coal is sold at F. O. B. mine.

We are to ship all coal to consignees direct and render bills to you at net prices and payments are to be made monthly.

The above is subject to strikes and car supply.

Yours truly,

             Carterville Coal Co.

             H. B. Burr.

Accepted March 10, 1909.

     Covey-Durham Coal Co.,

       R. W. Durham, Secy."

After reciting the contract as above, the affiant says that defendant cannot prosecute its counterclaim be-

cause it had broken the contract and was in default in payment for coal already shipped and delivered to its consignees before the date on which the coal mentioned in the counterclaim was to have been shipped and delivered; that the counterclaim cannot be a set-off under plaintiff's statement of claim because it is "for unliquidated damages arising out of the purchase and sale of a commodity at different dates, to different people, for different amounts;" that the orders described by defendant in its set-off are not contracts, but "are only memoranda," and as well as the receipts attached were all sent only "under the terms and conditions of the contract of March 10, 1909;" that the said contract provided that the shipments were to be made subject to car supply and that the plaintiff shipped all the coal ordered under the contract to the consignees named as far as possible with the car supply furnished the plaintiff, and that if there was any failure to deliver any of the coal described in defendant's amended set-off, it was by reason of plaintiff's inability to secure cars in which to make such shipments to the consignee indicated by the defendant; and that the plaintiff is informed and believes that the defendant did not purchase any coal at the market price during January and February, 1910, and was not damaged in any particular by any failure of the plaintiff to deliver coal to it.

At the trial of the cause, which began on May 27, 1912, the defendant first asked for an order directing the plaintiff to file a deposition of H. B. Burr, the president of the plaintiff Company, which had been taken at St. Louis at the instance of the plaintiff under a stipulation and sent to the plaintiff's counsel in Chicago but not filed in court. This motion was reserved temporarily but afterwards denied, and during the progress of the trial all offers or attempts, of which there were many, to prove certain admissions alleged

to have been made by Burr in the said depositions were overruled.

The counsel for the defense then moved that he be allowed the opening and close in the trial. This motion was denied. All these rulings were excepted to and are complained of as erroneous.

The answers filed by defendant to certain interrogatories propounded to it under the Municipal Court Act were offered by plaintiff and admitted over the objection of the defendant, and in answer to the interrogatory, "Did the Covey-Durham Company through its duly authorized agent or agents enter into the following agreement with the Carterville Coal Company" (then reciting the document dated March 10, 1909, before set forth as a part of the affidavit of the President of the Carterville Coal Company filed December 16, 1911), the answer was "Yes." The admission of this document was especially objected to. Other answers to the interrogatories practically admitted that the coal set out in the plaintiff's statement of claim was shipped by the plaintiff at the request of the defendant, but it was said; however, that mistakes made the plaintiff's claim founded on the said shipments $237.20 too large, and "that all the coal requested by defendant to be shipped was not shipped."

The plaintiff admitted the corrections pointed out by defendant and introduced evidence that the interest on $3,603.13, which-it maintained was due to it for two years and one month at five per cent. was $369.04, and asked judgment for $3,972.17, which was reduced when the final instruction was requested to $3,919.54, for which the judgment was eventually given.

The plaintiff having rested its case, the defendant introduced in evidence all the orders sent by the Covey-Durham Coal Company to the Carterville Coal Company during 1909 and 1910, with the receipts, acknowledgments or acceptances thereof, as set out in the defendant's set-off and counterclaim above recited, and the plaintiff, "subject to the objection that the agent

is estopped to introduce such evidence," admitted that it failed to ship coal as set out in defendant's amended statement of set-off and counterclaim, "owing, as it claimed, to inadequate car supplies."

Certain postal cards were introduced by the defendant from the Carterville Coal Company to the Covey-Durham Coal Company, showing shipments of certain portions of the coal ordered under the forty-nine orders previously admitted to have been given and a great deal of correspondence between the two Companies to the suit, on the one side urging more speedy shipment of the coal to the consignees named in the forty-nine orders, and complaining of delays, and on the other, laying the fault to the short car supply, expressing hope of being able to be more prompt in the future and after August asking prompter or larger remittances on account of the coal shipped.

The differences between the two Companies reached a climax by April 5, 1910, and a letter of that date from the Covey-Durham Company to the Carterville Company stated the claim of the Covey-Durham Company to be that because of the failure of the Carterville Company to furnish the coal agreed on, at the times agreed on, the Covey-Durham Company had filled orders for about 5,000 tons of coal, which cost them or was worth to them $4,500 more than the price for which the Carterville Coal Company had agreed to furnish it, and on about 4,000 other tons which they had contracted to have delivered, but which orders they had not been obliged to fill, they had lost their commissions of at least ten cents a ton; that they had suffered a large amount of damage (at least $4,000) for the injury to their business by their inability to keep their promises through the default of the Carterville Coal Company, and that they were entitled also to commissions in accordance with the "contract of March 10, 1909" on certain coal shipped by the Carterville Coal Company on orders of other persons into the

territory where, by the said contract, the Convey-Durham Coal Company was to have the exclusive sale.

In a subsequent letter of the Carterville Coal Company introduced in evidence, the claim for commissions on a consignment of coal made to a third party in the said territory without the intervention of the Covey-Durham Company was admitted, but no further claim.

Besides the evidence heretofore alluded to, it was shown that some of the cars ordered to be shipped on some of the forty-nine orders which were not shipped at the times specified in the orders were subsequently shipped and received and accepted by the consignees, and subject to "a general objection for immateriality, which was reserved by the Court," evidence offered by the defendant was received of the market prices of six inch lump coal f. o. b. the mine in the Carterville locality in the different months and parts of months from July, 1909, to March, 1910.

The defendant also attempted to introduce a notice served on defendant during the pendency of the suit, signed by plaintiff's attorney, setting forth the agreement of March 10, 1909, and giving notice of a motion to strike the defendant's set-off and counterclaim from the files for the reasons:

"First.    That there is a want of mutuality in the contract between the plaintiff and defendant sufficient to found the defendant's set-off and counterclaim upon.

Second.    Because the set-off and counterclaim of defendant is for unliquidated damages arising out of independent contracts for the sale and purchase of commodity.

Third.    Because the contract between said plaintiff and defendant is severable and consists of several distinct and separate items, and no set-off or claim can lie in law for the above reasons."

This evidence, which was apparently offered for the purpose of showing an admission by the plaintiff that the transactions in question were not governed by the document of March 10, 1909, was on objection by the plaintiff excluded.

The court on motion of the plaintiff after the conclusion of the evidence instructed the jury to find the issues in favor of the plaintiff and to assess plaintiff's damages at the sum of $3,919.54. That verdict having been returned, the court, after a motion for a new trial and a motion in arrest of judgment had been overruled, entered judgment upon it for the amount named. The defendant appealed and in this court has assigned as error and insists upon these matters:

That the court erred in refusing the defendant the opening and closing of the case;

That it erred in the admission of improper evidence, especially that of the agreement of March 10, 1909;

That it erred in striking out the paragraph of defendant's statement and counterclaim, which asserted unliquidated damages to the defendant's business by the default of the plaintiff;

That it erred in the exclusion of proper evidence—notably in the exclusion of the testimony of the president of the plaintiff Company taken at St. Louis on a stipulation, which deposition, or a copy thereof, or secondary evidence of what was said by the witness therein, should have been admitted;

That it erred in instructing the jury for the plaintiff, as requested, and at least in including interest in the amount of the plaintiff's claim.

Runnells, Burry & Johnstone, for appellant.

O'Bryan & Marshall and Judson, Green & Henry, for appellee.

Mr. Justice Brown delivered the opinion of the court.

As we have said in the statement prefixed, this cause turned largely in the court below on the construction given to the agreement of March 10, 1909. That agreement was and is treated in a puzzling and inconsistent manner by the parties to this controversy. The plain-

tiff sued for coal sold to the defendant and stated its claim in that way; but it now says that it sold no coal to the defendant. It says in its argument: ''The plaintiff entered suit in the Municipal Court against defendant for the sum of $3,897.40, the proceeds due plaintiff for collections made by defendant as its agent from third parties.''

It certainly used inapt language in its ''statement of claim,'' which answers to a declaration, to express this idea, and as no ''collections'' of any ''proceeds'' were shown to have been made by ''the defendant as the agent of the plaintiff,'' what warrant was there for the peremptory instruction to the jury under this theory?

Again the plaintiff says in its argument: ''It was not intended to sell the coal to the company and to create the relation of debtor and creditor, but only to make the defendant herein the agent of the plaintiff to take orders for the coal and authorize the defendant herein as agent to collect and account for the proceeds of the coal.'' And again, that ''the Court's review'' of the documents and dealings involved ''will show that the Covey-Durham Coal Company was the agent of the Carterville Coal Company to sell its coal on commission within a certain exclusive territory and to collect for the coal which was delivered to said third persons, deduct its commissions for its services and remit its principal, the Carterville Coal Company, the amount as shown by the bills rendered to them at net prices, etc.''

This theory of the plaintiff carried to its logical conclusion is on the present record as destructive to the plaintiff's right to recover as it is of the defendant's asserted set-off, if indeed it is not more so.

On the other hand, the defendant in insisting that each of the forty-nine orders and acceptances is a distinct, severable and separate contract, and that the contract of March 10, 1909, is negligible, is urging a theory which if not fatal to, certainly renders very doubtful its right of set-off of the unliquidated damages which

it is claiming as an aggregate amount for the combined defaults of the plaintiff.

But neither of the positions taken is sound. The contract of March 10, 1909, is something more than an agency contract, because whatever else it does or does not do, its words and the construction put upon them by both parties render the Covey-Durham Coal Company liable to the Carterville Coal Company for the coal shipped by the latter to third parties on the orders of the former. If it is a contract of agency it is a *"del credere"* agreement, making a *"del credere"* agency, which since *Grove v. DuBois* (1 T. R. 112) in 1785, when Lord Mansfield decided that such an agreement was enforceable and absolute, making the broker or agent liable to the principal in the first instance, without reference to "proceeds collected," has been a very commonly used device in mercantile proceedings.

On the other hand, however inconsistent with the theory on which the "Statement of Claim" was originally made, the position of the plaintiff later taken was indubitably sound. It was that the contract of March 10, 1909, could not be left out of account in this litigation; that the transaction and defaults, if they existed, in connection with the forty-nine orders introduced, could not be treated without reference to it, but that unless it could be shown that the March 10th contract had been abandoned, the entire scope and course of the business must be considered in connection with it, and that it must be held to have bound together and in a sense unified the transactions.

One of the errors strenuously insisted on by the defendant is that while under the "pleadings" the defendant was entitled to open and close the case, it was denied that right. It would seem on the authority of the cases cited in defendant's argument, so far as an analogy can be traced between the more informal proceedings and practice of the Municipal Court and the practice and pleadings at common law, to have merit in its claim; but we hold the error, if it was committed,

178        APPELLATE COURTS OF ILLINOIS.

Carterville Coal Co. v. Covey-Durham Coal Co., 186 Ill. App. 163.

too technical and really immaterial to warrant a re-
versal on that ground. We should not deem it worth
while even thus briefly to allude to it if it were not that
the raising of the question and the insistence on it
emphasize a criticism we feel disposed to make of the
conduct of the case hitherto, which we hope will not
apply to the new trial which, for reasons hereinafter
stated, we feel compelled to order. Too much atten-
tion was paid to manœuvring for position and too great
insistence made on the exclusion of evidence which
might have thrown light on the really vital questions
at issue, namely: What did the contract of March
10, 1909, mean in the minds of the parties who made
it? Was it broken? If it was, by whom first? Also,
if it was so broken first by the plaintiff, what damages
resulted to the defendant?

The agreement in question is said by the defendant
(a) To be no contract because wanting in mutuality.
(b) If a contract, then abandoned by the plaintiff, in
the bringing of this suit "for goods sold and deliv-
ered." (c) If a contract, then even if the form of the
suit did not estop the plaintiff from insisting on it,
yet asserted by the defendant to have been abandoned
by both parties before the transactions which are sued
for herein. (d) If a contract and not abandoned, then
unambiguously a contract of purchase and sale. (e)
If a contract and ambiguous, then to be construed by
and in the light of the intention of the parties as ex-
pressed by the utterances of their representatives and
by their acts under it.

Of these propositions we find no difficulty in nega-
tiving the first two (a and b) and the fourth (d). We
think that in what was expressed and implied in the
document of March 10, 1909, there was a valid con-
tract; and although the plaintiff took a strange course,
to our minds, in "stating his case," there came out in
the procedure, before the actual trial began, the agree-
ment prior to the "deliveries;" and the difference be-
tween a liability on a *del credere* agency and on a direct
purchase is not, we must hope, so great that under the

reformed and summary practice of the Municipal Court, designed and supposed by many to be so great an improvement on the forms of the common law, a mistake in the form of the "statement" is irremediable.

Nor do we need to advert to the third proposition of the defendant (c) except to say that while there is no evidence whatever now in the record to sustain it, and much that would seem definitely to negative it, the defendant was, by what we hold to be an erroneous ruling on evidence, prevented from introducing alleged admissions of the plaintiff's president and managing agent, and we are unwilling unnecessarily therefore to foreclose the defendant's right to assert hereafter anything which it is conceivably possible, even if improbable, might be proven by such admissions. But with the fifth proposition of defendant (e) we can see no reason to disagree, and if it is correct we think that the court below seriously erred in excluding the evidence which it was stated would show the construction of the contract by the plaintiff.

That it was ambiguous and in a sense designedly so, is in our opinion clear. It looks to us like a *del credere* agency contract rather than one of purchase and sale. It differs from the one discussed in *Finch & Co. v. Zenith Furnace Co.*, 146 Ill. App. 257, but it is "like a mermaid," as was that. The parts are changed in position and the result is different. The quotation used in the *Zenith Co.* case might be inverted perhaps in speaking of it, and we might say *"prima pristis, postrema hominis facies!"* But it is one of those contracts anent which Mr. Justice Lurton, now of the U. S. Supreme Court, when sitting in the U. S. Circuit Court of Appeals for the Sixth Circuit, justly remarked: "Hardly any two contracts raising the question of sale or agency are so near alike as to make an opinion construing one an authority in another. It matters little what the parties call such agreements. Whether the result is a sale or an agency must depend

upon the meaning and intent of the instrument as a whole." *Miles Medical Co. v. Park & Sons Co.*, 90 C. C. A. 579, 164 Fed. 803.

On such contracts evidence as to how by word or deed they have been construed by the parties to them is material and admissible. A corporation must act and speak through its officers and agents; and we think that the court below erred in rejecting the testimony concerning alleged statements of the plaintiff's president and business manager, and then instructing the jury for the plaintiff. We think it very doubtful at best whether the deposition taken in St. Louis on a stipulation ought not to have been sent to the clerk of the court. We do not think that the cases cited by the plaintiff's counsel go to the length of holding, as they urge, that it might be withheld from the clerk and consequently altogether withheld from being read by the defendant at the trial. But even if the defendant had no right to the filing or reading of the deposition, it had a right to prove anything in the nature of admissions made by Burr for his Company concerning the intention and meaning of the contract of March 10th which it could prove by a witness who heard them made. It made no difference that these admissions, if there were any, were taken down and sworn to afterwards. That they were made, and especially to or in the presence of a representative of the defendant, was the important thing in this phase of the matter. The contention of plaintiff, apart from the alleged incompetency of Mr. Burr to admit anything for the Company, seems to be that the offered witness was only forbidden to say what he knew only from reading the deposition, but this is not what the record shows. The court having refused to require the deposition to be filed, or to allow a carbon copy to be read, erred in ruling that as a consequence no oral testimony could be heard of anything which Burr said while giving his deposition and which made a part of said deposition. This was a *non sequitur*.

That Burr's alleged "admissions" may not be con-
clusive when received, that the court may perhaps after
they are heard still feel compelled to rule that the con-
struction of the agreement is for the court, is possible;
but it was error to exclude the testimony without hear-
ing and considering it, and because of that error an in-
structed verdict cannot be allowed to stand.

There is, however, another serious error in our opin-
ion which as imperatively requires reversal. We do
not think the court, while holding, as it evidently did,
the contract of March 10th to be one of a *del credere*
agency (a conclusion which on the record as it now
stands seems to us a correct one), should have stricken
out and refused all evidence on the clause in the de-
fendant's "Amended Statement of Set-off and Count-
erclaim," filed July 10, 1911, which alleged damages to
its business by reason of the defaults of the plaintiff
in its relations with it.

If the agreement of March 10th is on another trial
held to be abandoned or to be no contract or to be a
contract simply of purchase and sale, or if in any form
the forty-nine orders, acceptances and partial deliv-
eries are held to be severable, separate and distinct
transactions, we do not wish to be understood hereby
as laying down any rule of damages to be applied; but
if the said agreement is held again to constitute a *del
credere* agency, and to have bound the transactions in-
volved in this cause together, then, in the interest of
speeding the cause, we state the following to be our
opinion as to the evidence which would be competent
to prove damages on the claim of set-off, if a default
in its obligations rendering the plaintiff liable on the
set-off should be first proven:

First. Evidence of what direct expenditure the de-
fendant had been obliged to make or loss to stand in
filling any of the orders on which it had made itself
liable, or in paying damages for a default therein. Of
course in this item only those sums could be allowed
which had been actually expended or lost because of

182    APPELLATE COURTS OF ILLINOIS.

Carterville Coal Co. v. Covey-Durham Coal Co., 186 Ill. App. 163.

some legal liability under which the defendant had come.

SECOND. Evidence of the amount of "commissions" provided for by the agreement of March 10, 1909, which the defendant had not received but would have received if the plaintiff had not so indefensibly defaulted.

THIRD. Evidence of any further direct pecuniary damage to the defendant by reason of loss of business or of business standing through the defaults of the plaintiff.

Conjectural, remote, speculative damages could not be recovered; but if the defendant offers to prove damages that are the direct and natural result of the breach and are not problematical, he should be allowed to try to do it, whatever the difficulty it may be reasonably foreseen he will have in succeeding. By the ruling of the court striking out the clause in question from the amended statement of claim, the defendant would have been foreclosed from any such attempt, however the other questions in the case had been decided. It will be seen that we do not agree with either party in the matter of the rule of damages on the set-off, if the plaintiff should be found liable for a set-off; but we do not think it necessary to discuss further the question or to attempt to show in detail the fallacy of the "market price" theory put forward by the defendant.

There is but one other matter we think it necessary to mention. The plaintiff makes much of the contract of March 10, 1909, making the deliveries subject among other conditions to "car supply." It did make them so subject, but if a default or delay in deliveries was attributable to lack of "car supply," it was for the plaintiff so to prove, and to show self-serving letters of the plaintiff stating that a scarcity existed is manifestly not sufficient. We think, moreover, that evidence is competent as tending and aiding to construe the contract of the custom of the coal district involved in these transactions concerning the furnishing of cars as between the plaintiff and defendant. We speak of this

because the defendant says in its argument that there was testimony to such a custom, and the plaintiff says it was stricken out. Reference to the record shows it at least very doubtful if the statement that there was a custom as described was stricken out. In any event, we think evidence of a custom, if it exists, competent, as we have said.

The judgment of the Municipal Court is reversed and the cause remanded to that court.

*Reversed and remanded.*